IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No.  03-cv-01181-LTB-BNB

ROBERT PAUL THORPE, and
MARIA ELIZABETH THORPE,

      Plaintiffs,

v.

STANLEY ANCELL,
JULIA STOGSDILL,
ROBERT RUSSELL,
CRAIG TYER,
LISSAH NORCROSS,
DAVID WOOLEY, a/k/a JESSE DAVID WOOLEY,
RIECKE CLAUSSEN,
JOHN C. JACKSON,
ROBERT M. CULVER,
MARTYN CURRIE, and
WILLIAM "BILL" GARDNER,

      Defendants.

---

## ORDER

---

The plaintiffs, Robert and Maria Thorpe, initiated this 42 U.S.C. § 1983 ("Section 1983")

suit against members of the Grand Junction Police Department ("GJPD") and Mesa County

Sheriff's Department ("MCSD") after a criminal prosecution of them by the GJPD resulted in

voluntary dismissal of the charges.  While granting the defendants' motions for summary

judgment and entering judgment in their favor, I noted that the plaintiffs had included in their

complaint singular, sensational allegations about which nothing appeared in the summary

judgment record.  Also, I noted that resistance to the defendants' summary judgment motions had

proven frivolous.  I ordered the plaintiffs and their then-counsel, Benjamin Silva, to show cause

why I should not sanction them.

Mr. Silva and the plaintiffs have since parted company and fault each other for the

discrepancy between their allegations and the record on summary judgment.  Mr. Silva asserts

that the plaintiffs assured him of the verity of their claims throughout the course of the litigation.

The plaintiffs contend that Mr. Silva failed to place into the record evidence that would have

demonstrated the merit of their allegations.  The defendants have all filed for attorney fees.

The motions and order to show cause are adequately briefed and oral argument would not

materially aid their resolution.  For the reasons stated below, I GRANT the defendants' motions

in part and order the plaintiffs, pursuant to 42 U.S.C. § 1988(b), and Mr. Silva, pursuant to 28

U.S.C. § 1927, to pay portions of the defendants' fees.

## I.  Sanctions against Mr. Silva

Any attorney or other person admitted to conduct cases in any court of the United States
or any Territory thereof who so multiplies the proceedings in any case unreasonably and
vexatiously may be required by the court to satisfy personally the excess costs, expenses,
and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  Because, as set forth in my May 1, 2006 order and reiterated below, no

reasonable attorney could have viewed the Thorpes' claims as anything but frivolous, I conclude

that Mr. Silva's opposition to the defendants' summary judgment motions constituted

unreasonable and vexatious multiplication of these proceedings.

Mr. Silva asserts that his evaluation of the merits of the Thorpes' claims was premised

upon the Thorpes' averments of the truth of their allegations and upon the belief of Gil Stone,

chief investigator for the Mesa County District Attorney's office, that the prosecution of the

Thorpes was done with malice.  He argues that his reliance upon the Thorpes' representations and upon Mr. Stone's conclusions was reasonable and absolves him of responsibility for any frivolous litigation.

I note that lacking is any indication that Mr. Silva undertook at the outset of this litigation to confirm by investigation or discovery that the Thorpes' striking allegations – including that the defendants employed a known prostitute to seduce their16-year old son and that investigating detectives solicited perjurious testimony against them – enjoyed any evidentiary support.  *Laurino v. Tate*, 220 F.3d 1213, 1218 (10th Cir. 2000).  Mr. Silva does not disagree, but rather characterizes the spurious allegations as ancillary to the substance of the Thorpes' claims.  I need not resolve that question because, as set forth below, I find alternate grounds for sanctions against Mr. Silva.

Mr. Stone gave no indication, in deposition or in his ten-page memorandum, that any of the defendants had broken any laws or in any way trenched upon a clearly established constitutional or statutory right.   *Beard v. City of Northglenn*, 24 F.3d 110, 114 (10th Cir. 1994).  The MCSD defendants did not even participate in the investigation of the Thorpes.  That Mr. Stone views the GJPD defendants' investigation with disfavor does not establish that any of the defendants violated Section 1983.  It is the duty of counsel to determine what legal consequences, if any, attend to the claims of witnesses.  Lacking in all of Mr. Silva's filings in this case is any indication that he ever pondered the question whether Mr. Stone's report constituted evidence of a Section 1983 violation.

Mr. Silva gives no explanation for sundry misstatements contained within his brief opposing the defendants' motions for summary judgement.  Among the assertions in the brief that

find no evidentiary support in the record are: that the defendants "coerced a false confession from" a witness, that the prosecutor "had many concerns about the investigation of the Thorpes," that an informant obtained inculpatory evidence by impersonating Mrs. Thorpe with the defendants' knowledge and assent, and that a witness implicated one of the defendants in carrying on a sexual relationship with an informant.

Mr. Silva's zealous advocacy on the Thorpes' behalf during discovery resulted in an extensive record, which failed to corroborate the Thorpes' allegations. Once discovery was completed, Mr. Silva ought reasonably and responsibly to have dismissed the case. *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985). Continued litigation after that time could no longer be characterized as zealous representation, but rather became a serious and studied disregard for the orderly processes of the court. *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1225 (10th Cir. 2006); *Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1148 (D. Colo. 2000). Further evidencing his disregard, Mr. Silva mischaracterized the record in several, material respects. *Sangui Biotech Intern., Inc. v. Kappes*, 179 F. Supp. 2d 1240, 1245-1246 (D. Colo. 2002). For these reasons I find Mr. Silva liable to the defendants for attorney fees expended in pursuing summary judgment, pursuant to 28 U.S.C. § 1927 and this Court's inherent power to manage its own proceedings.

## II. Sanctions against the Thorpes

42 U.S.C. § 1988(b) enables a prevailing defendant in a Section 1983 action to recover from the plaintiff his or her reasonable attorney fees where the suit is vexatious, frivolous, or brought to harass or embarrass the defendant. *Ferroni v. Teamsters, Chauffeurs & Warehousemen Local No. 222*, 297 F.3d 1146, 1153 (10th Cir. 2002).

4

The Thorpes argue that their claims appeared frivolous only because Mr. Silva failed diligently and competently to litigate them.  Annealed in their view that the defendants prosecuted them with malice and without cause, they find indicia of malice in considered evidence and newly-proffered materials that do not support the inference.

The Thorpes recite statements by David Waite, the Moffat County deputy district attorney who was assigned Special Prosecutor for Thorpe prosecution.  They quote that portion of Mr. Waite's affidavit in which he stated,

> My decision [in June, 2002 to dismiss the charges against the Thorpes with prejudice] was not based on any belief that probable cause did not exist for the arrests, but rather due to my concerns of proving each of the charges beyond a reasonable doubt, and due to strategic considerations based on the Court's ruling to sever all charges for trial.

The Thorpes editorialize, "Note that he does not say he believed there was probable cause."  This is a misrepresentation of the record.  The Thorpes have omitted from their brief the very next sentence of the paragraph they quoted, in which Mr. Waite stated, "At the time the charges were dismissed in June of 2002, I still held the belief that probable cause existed for the arrests of Maria Elizabeth Thorpe and Robert Paul Thorpe on each of the charges filed against them."  Here, as before, the record not only fails to support the Thorpes' characterization of it, but flatly contradicts their view.

The Thorpes quote from Mr. Waite's October 26, 2001 letter to Detective Culver, discussing a plea offer extended to the Thorpes, in which he stated, "The felony conviction, as we discussed, would take the [Thorpes] out of the bonding business."  That the two men discussed the consequences to the Thorpes of a felony conviction does not give rise to the inference that they intended to destroy the Thorpes' business, much less that such potential business loss

5

motivated their prosecution.  The interpretation that the Thorpes make of this statement is only reasonable if the reader first assumes the conclusion; the Thorpes' reasoning is circular.

The Thorpes rehearse that the defendants' informants suffered from dubious credibility, and quote Mr. Waite's statement that "it appears there is a lot more to Heather [Fish] than I thought and would bear looking into."  They reiterate their frustration that Detective Stogsdill recommend to a prosecutor that Ms. Fish not be charged with a theft of which Mrs. Thorpe accused her and that Detectives Ancell and Culver did not look into the matter.  However, any failure by Detectives Ancell and Culver more closely to scrutinize the intramural squabbles among the Thorpes, Greens, and Ms. Fish did not rise to the level of knowing or reckless disregard for truthfulness.  *Beard*, 24 F.3d at 114; *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); *United States v. McKissick*, 204 F.3d 1282, 1297 (10th Cir. 2000).

The Thorpes argue that Ms. Fish and Mr. and Mrs. Green were not citizen informants. This purported failing, which they call "the most glaring," is a red herring.  The warrant affidavits did not portray the informants as disinterested citizens.  Indeed, the detectives revealed that: Ms. Fish and the Greens were business associates of the Thorpes; Ms. Fish had received crime proceeds from Mr. Patton and had lied about the fact to Deputy Tyer; the Greens had been present during Mrs. Thorpes' alleged burglary at Dorothy Ausmus' residence and during her alleged forgery of documents at the Thorpes' business premises; Ms. Thorpe had allegedly vandalized the Greens' vehicle; George Schryver, another informant, had twice been arrested in 1997 and had recently responded to a warrant in California.  A reasonable reader infers that, if the detectives had intended to conceal from the state judge the informants' motives, prejudices, and iniquities, they would have omitted those data.  That the detectives were imprecise and that they

6

did not search out additional indicia of ill will and self interest does not give rise to a *Franks* question.

The Thorpes note that a letter from Martin Currie, Chief of the GJPD, to Mr. Waite references correspondence between Detective Culver and Mr. Waite, which they claim not to have received in discovery. This is neither the time nor the forum for resolving discovery disputes.

The Thorpes fault the defendants for not producing during prosecution of the criminal case an accounting of Deputy Tyer's investigation of Gary Patton's suspected bank robbery. They argue that absent a demonstration by Deputy Tyer that some of the proceeds of the robbery were missing, they could not lawfully have been charged with receiving from Mr. Patton proceeds of a crime. Here, as elsewhere, they have provided no indication that the defendants intentionally or recklessly withheld material information from the state court judge.

The Thorpes also proffer new evidence, which they assert Mr. Silva negligently omitted from his previous summary judgment filings. Included is a partial transcript of a recorded telephone conversation between Mr. Thorpe and Mr. Waite. The circumstances of the recording are not revealed and the Thorpes do not attempt to demonstrate that the recording is admissible. In the recording, Mr. Waite is heard to tell Mr. Thorpe that "unless we could kind of try the cases together, then it was going to be difficult to get convictions on... the separate cases all by themselves."

From this statement the Thorpes conclude that the defendants hoped to increase the likelihood of conviction or plea bargain by "piling on" the charges; presumably, the defendants hoped that the cumulative effect of charges against the Thorpes would prove sufficiently

prejudicial to overcome weaknesses in the individual charges.  That is certainly a rational

inference.  However, in light of Mr. Waite's averments that he believed probable cause existed for

each charge and that he knows of no falsity in the defendants' investigation, this newly-proffered

evidence falls far short of raising a fact question whether the defendants trenched upon a clearly

established constitutional or statutory right.  *Beard*, 24 F.3d at 114.  One can infer from the

record that the defendants were unable to prove their case beyond a reasonable doubt, but not

that they lacked probable cause.

The Thorpes provide the transcript of the November 18, 1999 recorded conversation

between them and Ms. Fish.  Detectives Ancell and Culver did not misrepresent the contents of

that conversation.

The Thorpes assert that Deputy Tyer is under a standing court order to disclose in all

cases he investigates that he was the subject of a disciplinary proceeding in an unrelated incident.

However, it is undisputed that neither Deputy Tyer nor the MCSD, for which he worked,

investigated the Thorpes' case.

The Thorpes contend that a court in an unrelated case granted a motion to suppress on the

ground that Detectives Ancell and Culver, who had investigated that case, had entered into a

premises without consent.  They argue,

> [That] incident coupled with the hereinafter reported conduct by Ancell and Culver in
> sending Fish and the Greens to obtain documents illegally from the A-1 Vail Bond office...
> demonstrated that Ancell and Culver have a practice of engaging in conduct which
> disqualifies them from immunity.  *Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092, 89 L.
> Ed. 2d 271 (1986).

Here again, the Thorpes' characterization of the record deviates from the record itself.

Ms. Fish's testimony, to which the Thorpes' cite, was that Detective Ancell asked her whether she

could obtain copies of documents inculpating the Thorpes, that she responded affirmatively, that she had a key to the Thorpes' office and had not yet broken off her employment relationship with them, that she copied documents from "our bonding files." Nothing in the record indicates that any of the defendants instructed Ms. Fish or Mr. and Mrs. Green to perform an unlawful search on behalf of the GJPD.

As I noted in my May 1, 2006 order, the defendants' criminal case against the Thorpes was not without its weaknesses. However, none of the newly-proffered evidence gives any indication that the defendants committed any actions giving rise to a meritorious Section 1983 claim and my view of the Thorpes' claims as frivolous remains unaltered.

Finally, the Thorpes proffer new allegations. Citations attend none of these assertions and no evidence is proffered in support: that Mr. Schryver had pledged to the Thorpes as collateral the vehicle that the Thorpes were alleged to have stolen and that he authorized the jail in which he was detained to release the vehicle's keys to the Thorpes; that the Thorpes had no account at the bank where they were alleged to have deposited William Stanford's bond collateral; that Detective Ancell knew or should have known that Mrs. Thorpe was contractually entitled to enter the Ausmus residence; that Mrs. Thorpe's vehicle, which was alleged to have appeared in a surveillance video confirming the Green's vandalism accusations, was in fact "in the shop on that date." Other allegations have no discernable relevance to the claims. Again, as before, I assume that any existent evidence supporting the new allegations would have appeared with the Thorpes' briefs.

I take as true, because undisputed, the Thorpes' assertions that they did not participate in Mr. Silva's preparation of the summary judgment opposition and that they did not see the

pleadings or briefs in this case until after I issued my May 1, 2006 order.  I also credit their

subjective view that members of the MCSD and GJPD treated them unfairly; they proclaim their

"sincere belief that their rights were violated."  Nevertheless, 42 U.S.C. § 1988(b) contains no

requirement of bad faith.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2, 103 S. Ct. 1933, 76 L.

Ed. 2d 40 (1983) (*citing Christiansburg Garment Co. v. Equal Employment Opportunity

Commission*, 434 U.S. 412, 421, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978)).  Litigation of a claim

through summary judgment without evidence in support is a typical demonstration of frivolity.

*See Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985).

Additionally, courts are not proper fora for publication of fantastic allegations of the sort that the

Thorpes concocted in their complaint.

      I note that the Thorpes' new counsel has notified the Court by supplemental filings of

certain (apparently inadvertent) misstatements contained in the briefs.  Counsel's candor is

commendable.

### III.  Amounts of the fees

      The GJPD defendants request fees in the amount of $101,261.00.  The MCSD defendants

request $65,060.00.  Section 1988 gives me discretion to award the defendants their reasonable

attorney fees.  Similarly, 28 U.S.C. § 1927 makes provision for payment of the defendants'

attorney fees "reasonably incurred."  I determine what is reasonable by first figuring a lodestar

amount and then adjusting that figure based on facts specific to this case.  *Bell v. Board Of

County Com'rs Of Jefferson County*, 451 F.3d 1097, 1101 n.3 (10th Cir. 2006).  "The lodestar

amount is the product of the reasonable hours worked on the case multiplied by a reasonable

hourly rate."  *Id*. at 1101.

The defendants have provided itemized accounts of their billable time, charged at rates reasonable for the local legal market. The GJPD defendants have deducted from their fee request a $15,000.00 fee award to which the parties stipulated after I dismissed the Thorpes' state law claims on February 11, 2005. The MCSD defendants seek those fees incurred after they filed their initial motion to dismiss, which, they argue, put the Thorpes and their counsel on notice that none of them had participated in the Thorpe investigation.

28 U.S.C. § 1927 permits fee awards only for multiplication of proceedings. Thus, I charge against Mr. Silva only those fees that the defendants incurred after the filing of their summary judgment motions on January 6, 2006 – $33,072.50 by the GJPD defendants and $21,206.00 by the MCSD defendants. *Steinart*, 440 F.3d at 1224.

I credit the Thorpes' assertion that they were not involved in the preparation of the summary judgment opposition. Nevertheless, they continue to demonstrate no appreciation for the frivolity of their claims. Moreover, they do not recant their specious and remarkable allegations. They shall be liable jointly with Mr. Silva for the sums the defendants have incurred since January 6, 2006 and solely liable for all sums incurred on and before that date.

Accordingly, it is ORDERED that:

1) the defendants' motions for attorney fees are GRANTED in part;

2) the GJPD defendants are awarded $101,261.00 against the Thorpes, for $33,072.50 of which Mr. Silva shall be jointly liable; and

3) the MCSD defendants are awarded $65,060.00 against the Thorpes, for $21,206.00 of which Mr. Silva shall be jointly liable.

Dated: August   18  , 2006, in Denver, Colorado.

BY THE COURT:


   s/Lewis T. Babcock
Lewis T. Babcock, Chief Judge